GLENN E. BRUMBAUGH, TRUSTEE, RESPONDENT, v. MAGGIE ADCOCK ET AL., APPELLANTS.—144 S. W. (2d) 823.

Kansas City Court of Appeals.   November 18, 1940.

*W. M. Morton* for appellant, Ladies Union Benevolent Association.

*Roscoe P. Conkling* for appellant, Maggie Adcock.

*Strop & Strop* for respondent, Glenn E. Brumbaugh, Trustee of the Estate of Cynthia A. Young, deceased.

*Groves & Watkins* for respondent, Wallace B. Young.

SHAIN, P. J.—The issue in this case involves the construction of what is termed a General Warrantee Trust Deed executed by Cynthia A. Young and George W. Young, husband and wife, to Charles F. Strop, Trustee.

The deed was executed in Buchanan County, where the parties lived and where the property conveyed was located, on April 28, 1921. The deed created a trust; the *corpus* of which, at the time the trust was made, consisted of real estate. However, under the provisions of the deed, power was given trustee to, under certain restrictions, sell the real estate and invest the proceeds. In fact, insofar as the trust fund is concerned, the trustee is given a broad delegation of control, including right of designating his successor.

The present trustee is shown to be a trustee in lawful succession, and this action was brought by him for the purpose of having the court construe the deed for a determination of the question as to whether or not he can take of the *corpus* of the trust fund and give it for support to a present surviving beneficiary to whom the net income of said trust fund now enures.

The respondent, petitioning trustee, asserts ambiguity in the language of the deed, and asks the court for guidance and to construe the deed.

Two appellants, Maggie Adcock and Ladies Union Benevolent Association, claim there is no ambiguity, and take the position that the *corpus* cannot be used. Wallace B. Young, the present surviving beneficiary of the net income, asserts right to partake of the *corpus* for his support.

The issues were presented to the Circuit Court of Buchanan County, Missouri, and the orders and decrees of that court are as follows:

"The Court finds that there is sufficient difference in the language of the several provisions of the deed creating the trust in issue in these proceedings to raise a reasonable doubt in the mind of the trustee and authorize a construction of the entire instrument for the information and guidance of the trustee; that said deed, dated April 28, 1921, by which said trust was created, means and the Court construes it to mean that during the life time of the said Wallace B. Young he should receive from said trust estate an income reasonably sufficient for his purposes, that is to say, reasonably sufficient to provide for his support;

"And the Court Does Hereby Order, Adjudge and Decree that if in the discretion of the Trustee of the trust estate created by a certain trust deed (dated the 28th day of April, 1921, and recorded in book 529, at page 6 in the office of the Recorder of Deeds within and for Buchanan County, Missouri) the net income of said trust estate at any time be not sufficient to insure to said Wallace B. Young an adequate income, that said trustee shall have the power and authority at any time, in his discretion, to use such portion of the *corpus* of said trust estate as may, in the discretion of said trustee, be necessary to insure to said Wallace B. Young an adequate income during the lifetime of said Wallace B. Young.

"It Is Further Ordered, Adjudged and Decreed that the costs of this proceeding be paid out of the trust estate, and that the Trustee is ordered to pay the same."

Maggie Adcock and Ladies Union Benevolent Association have duly appealed from the aforesaid judgment, orders and decrees.

Regardless of the facts, as to whether or not students of law might differ in opinion as to ambiguity, still we conclude that we are justified by the showing before us in holding that the circuit court did not err in holding that there were reasonable grounds to authorize the trustee to petition for guidance.

As to the determination of the question of taking from the *corpus* for the support of the present beneficiary, the deed must be considered from its four corners under the established rules of interpreting such instruments.

The grantors in the deed were the legal owners of the *corpus* of the trust fund in issue. As owners, these grantors had the absolute right to deed the property to a trustee and give such directions, as to its future uses and vesture as they saw fit, unless the transfer and future use and vesture be in fraud of creditors, for some unlawful purpose, or in violation of the rule as to perpetuity.

The grantors in the deed in question clearly divest themselves of title and vest the trustee with title during the life of the trust. Such benefits as enure to user of beneficiaries are limited to life with abso-

lute restrictions as to alienation by the beneficiaries before payment direct to them. In other words, as to each life beneficiary, there is created what is designated, in common parlance, as a "Spendthrift Trust."

There are three contingencies expressed in the deed, the happenings of which terminate the trust and absolutely vest title in the *corpus.*

The first life beneficiary is George W. Young, one of the grantors in the deed. The provision of trust as to George W. Young is as follows:

". . . the said trustee is empowered and directed to pay the entire net income from said real estate to George W. Young so long as the said George W. Young may live, such net income to be paid to said George W. Young quarterly, semi-annually or annually, as may be most convenient to said trustee and to said George W. Young, and said payments of income are to be made to said George W. Young personally when convenient, otherwise upon his written order or receipt in writing, but in either case free from the interference or control of his creditors. It is expressly understood and agreed that the use of said income shall not be anticipated by assignment by the said George W. Young. *It is the intention by this conveyance to insure the said George W. Young an income reasonably sufficient for himself during the period of his natural life,* but he, the said George W. Young, shall not have the power to sell, assign or pledge the same previous to the payment thereof to him, as aforesaid, by way of anticipation, and it is intended by this conveyance that no future creditor of the said George W. Young shall have any right to subject said income or any part thereof to the payment of his debts." (Italics ours.)

We have underscored the words above that have given rise to this controversy. The second beneficiary is Cynthia A. Young, also grantor in the deed. The same language as to use and restrictions as to alienation appear as set forth in grant to George W. Young, *supra.*

George W. Young and Cynthia A. Young have departed this life. Their son, Wallace B. Young, is living. The provision made for Wallace B. Young is as follows:

"It is further expressly understood and agreed that after the death of George W. Young and after the death of Cynthia A. Young, provided Wallace B. Young, their son, is then surviving, said trustee is empowered and directed to pay the entire net income from said trustee estate to Wallace B. Young so long as said Wallace B. Young may live, such net income to be paid to said Wallace B. Young quarterly, semi-annually or annually, as may be most convenient to said trustee and to said Wallace B. Young, and said payments are to be made to said Wallace B. Young personally when convenient, otherwise upon his written order or receipt in writing, but in either case

free from the interference or control of his creditors. It is expressly understood and agreed that the use of said income or payments shall not be anticipated by assignment by the said Wallace B. Young. *It is intended by this conveyance to insure the said Wallace B. Young an income sufficient for himself during the period of his natural life,* but he, the said Wallace B. Young, shall not have the power to assign, sell or pledge the same previous to the payment thereof to him, as aforesaid, by way of anticipation, and it is intended by this conveyance that no creditor of said Wallace B. Young shall have any right to subject said income or any part thereof to the payment of his debts. (Italics ours.)

"It is further understood and agreed that after the death of the said George W. Young, Cynthia A. Young and Wallace B. Young, if the said Wallace B. Young, leave issue surviving, said trust will cease and terminate, and said truste estate shall become the absolute property of the heirs of the said Wallace B. Young."

In the last above paragraph, there appears the first contingency for termination of trust and absolute vesture of the trust estate. Following the above provisions, the following appears:

"It is further expressly agreed and understood that after the death of the said George W. Young, Cynthia A. Young and Wallace B. Young, and provided the said Wallace B. Young does not leave issue surviving, and provided Maggie Adcock, the daughter of said George W. Young and Cynthia A. Young, is then surviving, the said trustee will pay the entire net income from said trust estate to said Maggie Adcock so long as she may live, such net income to be paid to said Maggie Adcock quarterly, semi-annually or annually as may be most convenient to said trustee and the said Maggie Adcock, and said payments of income are to be made to said Maggie Adcock personally when convenient, otherwise upon her written order or receipt in writing, but in either case free from interference or control of her creditors. It is expressly understood and agreed that the use of said income shall not be anticipated by assignment by the same Maggie Adcock. It is the intention of this conveyance that the said Maggie Adcock shall not have the power to sell, assign or pledge said income previous to the payment thereof to herself, as aforesaid, by way of anticipation, and it is the intention by this conveyance that no creditor, present or future, of the said Maggie Adcock shall have the right to subject said income or any part thereof to the payment of her debts.

"It is further expressly understood and agreed that after the death of the said George W. Young, Cynthia A. Young, Wallace B. Young, and provided said Wallace B. Young does not leave issue surviving him, and after the death of the said Maggie Adcock and provided said Maggie Adcock leaves issue, said trust is to cease and terminate,

and the said trust estate is to become the absolute property of the bodily heirs of the said Maggie Adcock.

"It is further expressly understood and agreed that after the death of the said George W. Young, Cynthia A. Young, and Wallace B. ·Young and Maggie Adcock, and provided the said Wallace B. Young does not leave issue surviving him and provided the said Maggie Adcock does not leave issue surviving her, then the aforesaid trust is to terminate and said trust estate is to become the absolute property of the Ladies Union Benevolent Association, a corporation for the use and benefit of the Memorial Home, sometimes called the 'Old Peoples Home.'

"It is further agreed that the said trustee is empowered, at the expense of said trust estate, to defend the trust herein created and to that end, at the expense of said estate, to employ and engage the service of such attorneys as may be necessary therefor."

In the second and third paragraphs above, the second and third contingencies for termination of trust and vesture of the estate appear.

As the instrument in question herein unqualifiedly makes an irrevocable vesture of the property in the trustee, we conclude the instrument to be a deed and not testamentary in character.

The fact that the instrument makes an *irrevocable vesture* of *corpus* in trustee, with directions only for distribution of income during the pendency of the trust, and vests absolute title to contingent remainderman gives *validity* to the instrument as a deed, as distinguished from an instrument testamentary in character, which, not being executed as a will, renders such an instrument void.

The polar star for construction of a deed is the intention of the grantor as gathered from the four corners of the instrument. [Goins v. Melton et al., 323 Mo. 413, 121 S. W. (2d) 821.]

The contention of defendant Wallace B. Young, to the effect that he is entitled under the deed to partake of the *corpus* of the trust estate, is based upon the language, to-wit: "It is intended by the conveyance to insure the said Wallace B. Young an income sufficient for himself during the period of his natural life." Contention is based upon the fact that such language, while occurring in prior clauses of the deed, does not occur in the clause referring to Maggie Adcock and bodily heirs.

In the construction of words found in deeds and wills, such meaning must be given as is consistent with the whole instrument, and, if trust is created, so interpreted if possible, as not to destroy the trust. The determination of the question of venture must always be in contemplation in giving construction to a deed. Law abhors failure of vesture as nature abhors a vacuum. There must be a vesture or no deed. In the case at bar, temporary vesture is in trustee. Such vesture, we conclude, is irrevocable by the grantors in the deed, and is

in that sense absolute until the termination of the trust. It is characteristic of the deed in issue that there is no contingency expressed in the whole instrument that can be construed to create, even by implication, any vesture in any of the life beneficiaries in and to the corpus of the trust estate. Consistent with the intent of the grantors, no vesture is made to them, even in the net income, until same has been paid direct to the beneficiary by the trustee.

In the construction of the deed in issue, we must give consideration to the fact that the provisions of payment to, and the restrictions placed on anticipation and alienation by the life beneficiaries are uniform. In other words, the same as to each. The payment is limited to net income exclusively and paid direct to the person. The language as to anticipation is, "shall not have the power to assign, sell or pledge previous to payment thereof to him, as aforesaid, by way of any anticipation." There is no language in the deed prohibiting any anticipation or alienation of the *corpus* of the trust estate by any beneficiary. This alone is conclusive of the fact that there was no intent to vest any right, title or interest in the *corpus* to any beneficiary who is limited to receive only during the term of natural life. If such be not the case, then a contingent interest in the *corpus,* whereby a judgment creditor could have execution and whereby a bankruptcy court could list same as an asset of such creditor would certainly destroy the intent of the grantors.

It is clear, from consideration of the instrument from its four corners, that the intent of the grantors, when the deed was made, was to suspend vesture by and through vesture in a trustee for term of the trust and until the happening of the event that expressly terminates the trust, and vests the estate in party designated.

The fact that situations are often presented wherein no one can know to what person or persons vesture will enure suggests the thought of no vesture. Such though vanishes when the rule in such situation be considered. The rule in such a situation is well stated in the text of Sec. 18, Chap. 4, page 492, Vol. 23, R. C. L., as follows:

". . . Since the one estate must begin where the other ends, it is essential to the existence of a remainder that there be nominated a person who will be *in esse* at the termination of the particular estate competent to take the remaining estate. But it is not necessary that the remainderman be *in esse* at the time when the remainder is created; it is enough if he be in being at the time when the estate must vest in possession if it is to vest at all, that is, at the termination of the particular estate. Whether or not he is in being before that time merely affects the character of the remainder as vested or contingent. As we shall see presently, if the remainderman is *in esse* when the remainder is created and there is no other contingency the right vests immediately; if not, the right is suspended, but exists in consideration of law, until he comes into being, whereupon it vests."

Insofar as the law of this case is concerned, it is the same as applies to a trust estate wherein the *corpus* is real estate and wherein vesture is placed in trustee for term of trust, and wherein vesture is suspended as to the remainderman until the event terminating the trust and vesting in remainderman.

It is the present rule that remainders in personal property may be created by will or by deed. By the express terms of the deed in issue, there is designated remainderman as follows: First, to the issue of Wallace B. Young, if surviving him, and if not surviving issue of Wallace B. Young, then the surviving issue, if any, of Maggie Adcock, if surviving her, and if none surviving her, then Ladies Union Benevolent Association, a Corporation.

As to these contingent remaindermen, there is no restriction as to alienation, and the remaindermen are so vested in the *corpus* of the estate as present right and title enures to sell and convey or to subject their interest to execution by a judgment creditor; grantees and creditors, of course, to take subject to the terms of the provisions of the trust until the trust is terminated. We note here that one of the terms of the trust is a salutary self-defense clause to the trust which provides for the defense of the trust to the diminuation of the *corpus,* if the need arises.

Based upon the premises above set forth, the judgment of this court is that the expression "intent," as appearing in preceding clauses to the clause as to Maggie Adcock, and the failure of such expression in the clause as to her, cannot be construed as giving right to Wallace B. Young to enure to any right to partake of the *corpus* or any right to the trustee to deplete the *corpus* by paying therefrom to said Wallace B. Young.

We have above set forth our conclusion as to use of *corpus* to defend the trust. The judgment of the circuit court is reversed. All concur.